Samuel C. EVANGELISTA, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

No. 87–1058.

United States Court of Appeals, First Circuit.

Submitted June 5, 1987.

Decided Aug. 11, 1987.

William R. Sullivan and Sullivan & Sullivan, Wakefield, Mass., on brief, for plaintiff, appellant.

Paul Germanotta, Asst. Gen. Counsel, Dept. of Health and Human Services, Frank L. McNamara, Jr., U.S. Atty., and Peter E. Gelhaar, Asst. U.S. Atty., Boston, Mass., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Claimant Samuel C. Evangelista appeals from a decision of the United States District Court for the District of Massachusetts. The district court refused to remand this social security case to the Secretary of Health and Human Services (Secretary) for the taking of new evidence, and dismissed the complaint. Evangelista argues that he satisfied the requirements for remand under 42 U.S.C. § 405(g). In conjunction therewith, he maintains that the Secretary's decision denying him benefits was not supported by substantial evidence. So, he says, the district court erred. We disagree.

I

On March 8, 1978, Evangelista initiated an application for disability insurance benefits, alleging an inability to work since April 6, 1976 on account of low back pain. Following a hearing before an administrative law judge (ALJ) at which Evangelista was represented by counsel, his claim was denied. The ALJ determined that, although Evangelista suffered from a severe medical impairment, his age, education, work experience, and residual functional capacity were such that he could not be considered as "disabled" within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520(f). The claimant did not seek judicial review and the decision became final.

On May 18, 1983 Evangelista filed a second application in which he claimed an inability to work since July 22, 1982 because of an assortment of factors (including back pain, hypertension, and cardiac problems). Because his insured status had expired at the end of 1980, Evangelista bore the burden of establishing that he became disabled within the meaning of the Act prior to December 31, 1980. A hearing was held on December 1, 1983 before the same ALJ. Evangelista, notwithstanding his earlier experience with the system and a specific reminder by the ALJ that he was entitled to counsel, elected to act as his own advocate.

Evidence presented at the hearing disclosed that the claimant was then fifty-six years of age, weighed 228 pounds and had a tenth grade education. He worked in manufacturing as a warehouse manager and traffic manager for a quarter of a century (until 1974), and as part owner and chief operator of a gift shop between 1974 and 1978. He contracted a back problem in March 1976. Since then, Evangelista had been treated, both in and out of hospitals and clinics, for a wide array of physical ailments. He testified, *inter alia*, that persistent lumbosacral pain and breathing trouble prevented him from working since 1978. His wife added her version of the plaintiff's travails and a prodigious quantity of medical evidence was introduced.[1]

Early in 1984, the ALJ issued a decision in which he determined that the claimant, though afflicted with a variety of ills, had no "impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4." Focusing on the decisive end-of-eligibility date (December 31, 1980), the ALJ opined that Evangelista "was probably not able to perform his past relevant work," but that his subjective complaints during this span were overstated, that is, at variance with the objective medical data. The ALJ concluded that, at the end of 1980, Evangelista had both the residual functional capacity and the requisite skills to satisfy the physical demands of sedentary work.[2] Considering claimant's age, edu-

1. The ALJ, in order to ease the plaintiff's burden, took notice of, and incorporated into the record, the medical evidence adduced in connection with Evangelista's earlier (unsuccessful) application for benefits.

2. The applicable regulations define "sedentary work" in the following way:
   Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
   20 C.F.R. § 404.1567(a) (1986). *See Thomas v. Secretary of Health and Human Services,* 659

cation, and work experience, as well as his exertional capacity, and applying Rule 201.-11 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 and 20 C.F.R. § 404.1569, the ALJ ascertained that the appellant was "not disabled" within the meaning of the Act. This determination, the ALJ believed, withstood one final test: Evangelista's nonexertional impairments did not significantly compromise his ability to perform the full range of sedentary work occupations.

After the Appeals Council denied claimant's request for review of the decision, Evangelista secured counsel and claimed an appeal to the district court. In lieu of filing a motion for summary judgment as requested by the court, Evangelista sought to have the case remanded to the Secretary for the taking of new evidence pursuant to 42 U.S.C. § 405(g). In a thoughtful memorandum and order dated December 11, 1985, the district court denied the motion for remand and dismissed the appeal.

## II

The controlling statute provides in pertinent part that the court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). In this case, the new evidence, supposedly "material," takes the form of an opinion rendered by Dr. Earl F. Hoerner, who describes himself as "a licensed physician specializing in orthopedics, musculoskeletal evaluation, rehabilitation and evaluation." The doctor first appeared on the scene June 10, 1985, subsequent not only to the Secretary's final decision, but some nine months after suit had been instituted in the district court. The inference is inescapable that appellant's counsel retained him to evaluate the case. Based on the evidence contained in the

administrative record and a physical examination which he conducted in June 1985 (including associated laboratory testing), Dr. Hoerner, in an affidavit appended to the motion for remand, stated that, since 1978, Evangelista had been:

> unable to carry out work activities within his job specification and job demands. Also, because of the degree and extent of his permanent disability he demonstrates little if any work capacity that would enable him to transfer his educational and vocational skills and training to another vocational pursuit.

■ Evangelista's claimed entitlement to a remand has two aspects. He must convince us, first, that the Hoerner evidence is both "new" and "material," as those terms are used in the statute. Second, he must show that there was a legally adequate reason (presumably, his lack of legal representation) for neglecting to present expert evaluative opinion such as that belatedly supplied by Dr. Hoerner. In other words, Evangelista must demonstrate that Dr. Hoerner's findings and conclusions comprise fresh (and important) grist for the Secretary's mill, and that claimant's *pro se* status constitutes the "good cause" which § 405(g) requires for the failure seasonably to have offered the evidence.

### A. *Newness/Materiality.*

■ Under 42 U.S.C. § 405(g), remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing. *Scott v. Califano*, 462 F.Supp. 240, 242 (N.D.Ill.1978). The mere existence of evidence in addition to that submitted before the hearing examiner will not constitute sufficient cause for remand. *Teal v. Mathews*, 425 F.Supp. 474, 481 (D.Md. 1976). Rather, to qualify under the new/material standard, the discovered data

F.2d 8, 11 (1st Cir.1981) ("[O]ne whose disability precludes sitting most of the work day is not ... adapted to sedentary work."); *Shiner v. Heckler*, 608 F.Supp. 481, 484 (D.Mass.1985) (quoting *Benko v. Schweiker*, 551 F.Supp. 698, 704 (D.N.

H.1982)) ("[A] determination that a claimant is able to perform sedentary work 'must be predicated upon a finding that the claimant can sit most of the day, with occasional interruptions of short duration.'").

must be meaningful—neither pleonastic nor irrelevant to the basis for the earlier decision.

■ The attempt to fit the Hoerner evidence within these guidelines is an ill-conceived effort to shove a square peg into a round hole. The medical record compiled before the ALJ was voluminous, detailed, and complex. It spanned many years, and dealt with an array of ailments. Given the prolixity of the evidence actually considered, it can scarcely be suggested that the taking of additional evidence is necessary for a fuller development of the facts of the case, or that the presentation of yet another medical report is somehow essential to afford the claimant a fair hearing. *Compare Scott v. Califano,* 462 F.Supp. at 242–43. Although Dr. Hoerner arranges the factual particles contained in the record in a somewhat different pattern, his affidavit and report offers no new *facts* of any relevance.[3] In short, the evidence is derivative rather than direct. It results from a retained physician's evaluation of the identical medical reports which composed the administrative docket. That Dr. Hoerner happened to view this collection of data differently, that he happened to disagree with the conclusion reached by the ALJ, does not render the *evidence* which forms the basis for his opinion any less cumulative of what already appears in—indeed, comprises the totality of—the record. If a losing party could vault the "newness" hurdle of § 405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning. A wide variety of evidence would be "new" in a sophisticated, enterprising world where there are often almost as many opinions as there are experts.

Though we view the lack of newness as dispositive on this furculum of the test, we remark that materiality is likewise a problem. We have held that remand is indicated only if, were the proposed new evidence to be considered, the Secretary's decision "might reasonably have been different." *Falu v. Secretary of Health and Human Services,* 703 F.2d 24, 27 (1st Cir. 1983). In this case, both the ALJ and the district court evaluated prodigious quantities of medical evidence bearing directly on the functional limitations posed by Evangelista's health impairments. This evidence included a physical capacities questionnaire completed by Dr. Harry Ashe (who examined claimant in August of 1979), which analyzed Evangelista's breathing problems and cardiac irregularities and reported that Evangelista retained residual functional capacities consistent with the ability to do sedentary work. For example, Dr. Ashe indicated that Evangelista could sit for up to six hours, stand for two hours at a time, and walk for an hour in each (eight hour) workday. In addition, he could lift up to fifty pounds, and carry as much as ten pounds "occasionally."[4] Evangelista could use his hands for such repetitive actions as simple grasping, pushing, pulling, and fine manipulation. He could use his feet for repetitive movements such as those required to operate foot controls. And, Evangelista could occasionally bend, squat, and reach above shoulder level.

In salient respects, Dr. Ashe's conclusions are corroborated by Dr. Donald R. Pettit, who examined the claimant for low back pain in October 1979. Dr. Pettit's examination revealed a "significantly overweight male, in no acute distress." After assessing the small extent to which Evangelista's motion was compromised, and noting that neither motor sensory reflex abnormality nor muscle atrophy were present, Dr. Pettit remarked:

Mr. Evangelista has symptomatic low back pain without significant confirmato-

---

**3.** Evangelista last met the Act's earnings requirement on December 31, 1980. Thus, the issue before the ALJ was whether or not the claimant was incapacitated *as of that date.* Dr. Hoerner's ability to shed light on that issue was seriously curtailed because he never examined the plaintiff until some four and one-half years later.

**4.** As used in this context, "occasionally" was a defined term meaning up to one-third of an eight hour workday.

ry signs.... I would advise Mr. Evangelista to lose weight and see a competent orthopedic surgeon and be pro[v]ided with a course of medication and exercises. He migh[t] respond to bracing. I believe that he does have a small disability in his back at this time, but one that could be well treated conservatively and which might return him to a more active life style.

Certainly at this time I believe that he could undertake a job which did not require prolonged standing or heavy lifting, and he might be able to become more active, if he were to follow the previously described regimen.

These findings, in turn, accord with the conclusions of Dr. Norman Theriault, a chiropractor, who in February 1978 reported that Evangelista possessed physical and exertional capabilities consistent with an ability to perform sedentary work. The findings of Dr. John J. Walsh, Jr., an orthopedist who examined the plaintiff in March 1979, can be read consistently with Dr. Theriault's views.

■ To be sure, there was evidence more hospitable to the claimant's outlook on the state of his health—Dr. Frederic M. Howard, for instance, found Evangelista to be "permanently disabled"—and the appellant himself complained of acute pain and distress. Yet, the ALJ found such medical assessments to be less probative than the contrary evidence, and determined that the claimant's "subjective complaints concerning his condition on and before December 31, 1980, are not consistent with objective medical findings of record." Conflicts in the evidence are, assuredly, for the Secretary—rather than the courts—to resolve. *See Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Gonzalez-Ayala v. Secretary of Health and Human Services*, 807 F.2d 255, 256 (1st Cir.1986); *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982). And, the ALJ's rejection of the degree of claimant's pain was, on this record, bolstered by objective clinical tests and findings, and therefore, supportable. *See Albors v. Secretary of Health and Human Services*, 817 F.2d 146, 147 (1st Cir.1986) (per curiam); *Miranda v. Secretary of HEW*, 514 F.2d 996, 1000 (1st Cir.1975) ("the Secretary is not at the mercy of every claimant's subjective assertions of pain").

■ The presence in the record of what seems to us as more than substantial evidence concerning Evangelista's residual functional capacity for sedentary work, coupled with the wholly derivative nature of the late-proffered report, prevents us from concluding that the administrative decision "might reasonably have been different," *Falu*, 703 F.2d at 27, had Dr. Hoerner's opinion been presented to the ALJ.

### B. *Good Cause.*

■ Even were we to assume—contrary to our finding—that Evangelista's tender comprised new, material evidence, remand would not lie. The claimant has articulated no "good cause" adequate to justify his failure to present such evidence to the ALJ. We address this aspect of the case briefly.

Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided—to the end that the process not bog down and unduly impede the timely resolution of social security appeals. *See Brown v. Schweiker*, 557 F.Supp. 190, 193 (M.D.Fla. 1983) (discussing legislative history). As noted in the Conference Agreement undergirding Pub.L. 96–265 § 307, which amended § 405(g):

[T]here are sometimes procedural difficulties which prevent the Secretary from providing the court with a transcript of administrative proceedings. Such a situation is an example of what could be considered "good cause" for remand. Where, for example, the tape recording of claimant's oral hearing is lost or inaudible, or cannot otherwise be transcribed ... good cause would exist to remand the claim to the Secretary for appropriate action to produce a record which the court may review....

H.R.Conf.Rep. No. 944, 96th Cong., 2d Sess. 59, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1407. *See also Bianchi v. Secretary of Health and Human Ser-*

*vices,* 764 F.2d 44, 46 (1st Cir.1985). Against this backdrop, Evangelista's asseveration that his earlier self-representation of and by itself satisfied the good cause requirement must fail.

We have long recognized that social security proceedings "are not strictly adversarial." *Miranda v. Secretary of HEW,* 514 F.2d at 998. Accordingly, we have made few bones about our insistence that the Secretary bear a responsibility for adequate development of the record in these cases. *See Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 80–81 (1st Cir.1982); *Currier v. Secretary of HEW,* 612 F.2d 594, 598 (1st Cir.1980). Understandably, this responsibility increases when the applicant is bereft of counsel. *Id. See also Bomes v. Schweiker,* 544 F.Supp. 72, 76 (D.Mass.1982).

This case, however, presents none of the ominous portents which have marked cases like *Deblois* and *Currier.* In the first place, Evangelista—an experienced claimant who had already been through the administrative process once before *with* counsel—made a knowing and intelligent waiver of his right to representation after having been informed, both orally and in writing, of his right to counsel.[5] Evangelista had only a tenth grade education, but he was a mature individual who had worked in a variety of white-collar positions requiring good comprehension and communicative skills. There was no unfairness in acceding to his wish: a claimant, after all, has as much right to proceed *pro se* as he does to engage a lawyer. *Cf. McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984) (criminal defendant has constitutional "right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel").

Moreover, the applicable standard in these "nonadversarial" proceedings is well below the Sixth Amendment threshold. *See Teal v. Mathews,* 425 F.Supp. at 480 ("The right to counsel in [a disability benefits] hearing is significantly different than the same right in a court proceeding.") Thus, it is clear that the absence of counsel, without more, creates no basis for remand. *See Hess v. Secretary of HEW,* 497 F.2d 837, 840 n. 4 (3d Cir.1974) (fact that plaintiff "not represented at the hearing is not, in and of itself, ground for remand"). There must be something extra. Thus, remand for want of representation "is necessitated only where there is a showing of unfairness, prejudice or procedural hurdles insurmountable by laymen." *Teal,* 425 F.Supp. at 480 (citations omitted). *Cf. Cullison v. Califano,* 613 F.2d 55, 58 (4th Cir.1980). The Third Circuit expressed the point well:

> The fact that a claimant is unrepresented by counsel and has knowingly waived this right [to an attorney] is not alone sufficient for remand. However, if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand....

*Livingston v. Califano,* 614 F.2d 342, 345 (3d Cir.1980) (citation omitted). *Accord Sims v. Harris,* 631 F.2d 26, 28 (4th Cir. 1980) (remand indicated "where the absence of counsel created clear prejudice or unfairness to the claimant"); *Domozik v. Cohen,* 413 F.2d 5, 9 (3d Cir.1969) (per curiam) (similar). *See also Ramirez v. Secretary of HEW,* 528 F.2d 902, 903 (1st Cir.1976) (per curiam) (right to counsel, voluntarily waived, will not furnish grounds for disturbing denial of benefits absent showing that claimant "was in any way misled, or that [the] hearing was in any way unfair").

Here, the ALJ was solicitous in attempting to assist the plaintiff. On several occa-

---

**5.** The following colloquy took place between the plaintiff and the ALJ at the start of the December 1, 1983 hearing:

ALJ: ... The first matter I want to discuss with you Mr. Evangelista is your right to representation. You know you have the right to have an attorney present at this hearing.

A: Right.

ALJ: Have you considered this matter carefully?

A. Yes.

ALJ: Are you prepared to go ahead without representation?

A. Right.

sions, he offered to give Evangelista "time to complete the record." After the appellant said he was satisfied that all of the medical reports had been brought forth, the ALJ volunteered: "I want you to understand clearly that if you have any other reports, hospital or doctor or any other types of reports you feel will be helpful, I want to take time to get them." At the very end of the hearing, the ALJ suggested that he hold the record open for a period of time, and Evangelista used this interval to obtain and introduce more reports.

The claimant offers no proof suggesting the sort of prejudice or unfairness attributable to self-representation as would warrant remand. *Compare Deblois v. Secretary of Health and Human Services*, 686 F.2d at 80–81 (holding that ALJ's failure to develop record of mentally impaired *pro se* plaintiff constituted good cause for remand); *Sims v. Harris*, 631 F.2d at 27–28 (remand ordered where lawyerless claimant "confused" and her testimony "directionless and generally incoherent"). To the contrary, we must agree with the district court that Evangelista appeared quite comfortable with his self-representation before the ALJ. He had the benefit of participation in a prior disability hearing during which he was assisted by counsel throughout. He made his points well. He presented voluminous medical evidence in support of his position. The mere fact that he was ultimately unable to persuade the ALJ to see things his way does not, without more, make out a case for prejudice which can satisfy the good cause requirement of 42 U.S.C. § 405(g).

Let there be no misunderstanding. We do not assert that Evangelista fared as well, or presented his case as ably, as if a skilled lawyer had been retained. Were that the criterion, then every *pro se* proceeding in which the applicant was less than fully successful would be in jeopardy. It is rare indeed that veteran counsel, given the benefit of hindsight, cannot train an eagle eye to discern something that could have been done better, or more convincingly, or not at all. The point is not whether Evangelista handled the matter as well as his current counsel might have done; rather, the point is that he was able to present his case adequately, and that the ALJ was sufficiently forthcoming to meet the attendant burden. Apart from the absence of evaluative medical evidence such as Dr. Hoerner would have provided—a matter already fully discussed, *see supra* Part II(A)—the plaintiff has been unable to point to any lapse or unfairness in the hearing process, and our independent search has revealed none.

We hold that, in the circumstances at bar, the fact that Evangelista eschewed the services of an attorney at the administrative hearing, and proceeded to handle his own case, does not constitute good cause for remand within the purview of 42 U.S.C. § 405(g).

### III

Evangelista has also briefed a substantial evidence challenge to the ALJ's decision and to the district court's dismissal of his complaint. Yet, the appellant has a threshold obstacle to surmount as he failed to press this argument below. A brief explication is in order.

In the ordinary course, the district courts review social security appeals on the administrative record, without taking new evidence. *See* 42 U.S.C. § 405(g) (on judicial review of Secretary's final decision, court empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary"); *see also Milton v. Harris*, 616 F.2d 968, 975 (7th Cir.1980) (per curiam). To this end, after the instant case was docketed and assigned, the district judge entered an order on April 9, 1985 applicable to a group of social security appeals (including this one). The order read:

The plaintiffs in these cases bring these actions under 42 U.S.C. § 405(g) to reverse the Secretary's decision regarding disability benefits. Since the Secretary has filed the administrative record in each case, the parties have all the information necessary for review in this court. In order to avoid further delay,

each plaintiff is hereby ORDERED to file a motion for summary judgment with a supporting memorandum within forty-five days of the date of this order. Failure to comply with this order will result in a dismissal for want of prosecution.

Evangelista abjured the filing of a motion for summary judgment. He filed only a motion to remand "for the purpose of taking further evidence pursuant to 42 U.S.C. § 405(g) (sixth sentence)." On December 11, 1985, the district judge denied remand; and, inasmuch as the plaintiff had espoused no further points, dismissed the appeal. The claimant moved for reconsideration.[6] Once again, he did not address the correctness *vel non* of the Secretary's decision, but asked the court only to rethink two points: (i) whether Dr. Hoerner's report constituted new and material evidence, and (ii) whether "good cause" existed sufficient to excuse his failure to present the report to the ALJ. That motion, too, was denied.

■ It is abundantly clear from this chronology that Evangelista never directly presented a substantial evidence challenge below. He wholly failed to press this claim either in his request for remand or in his motion for reconsideration. It is, of course, settled that matters not brought to the attention of the district court are deemed waived on appeal. *See Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987); *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979).

■ In any event, the argument lacks essential merit. "We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3

(1st Cir.1987) (per curiam). *Accord Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). Applying this yardstick to the record developed before the ALJ, we have no difficulty in sustaining the decision. Contrary to appellant's contention, the administrative record contains more than raw, uninterpreted clinical data such as would be inadequate for lay consideration. The medical information presented to the ALJ not only diagnosed Evangelista's various impairments, but related the consequential physical limitations to specific residual functional capacities of the sort set out in 20 C.F.R. § 404.1567(a). *See supra* n. 2. *Compare Rosado v. Secretary of Health and Human Services*, 807 F.2d 292, 293 (1st Cir. 1986) (per curiam). The basic idea which the claimant hawks—the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case—is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians.

### IV

The Secretary's final decision was bottomed on solid evidence of record. The belatedly-proffered report of Dr. Hoerner did not comprise "new" or "material" evidence. In any event, there was no "good cause" adequately to explain the failure to obtain the evidence sooner. Thus, the district court did not err either in refusing to remand this case to the Secretary for the taking of further evidence or in dismissing

---

**6.** We note that the motion for reconsideration was not filed until March 31, 1986. Inasmuch as there is no factual basis in the record arguably sufficient to meet the requirements of Fed. R.Civ.P. 60, the motion must have been brought under Fed.R.Civ.P. 59(e). If so, it may well have been untimely; a motion under Rule 59(e), by the very terms of the rule, must be served not later than ten days after entry of judgment. That temporal limitation is absolute and not

subject to extension. *Elias v. Ford Motor Co.*, 734 F.2d 463, 466 (1st Cir.1984); *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 154 (1st Cir. 1980). Because the government has not raised the point and because our examination of the record fails to indicate that a "separate judgment paper," *see* Fed.R.Civ.P. 58, was entered by the clerk upon the filing of the December 11 order for dismissal, we do not opt to hinge our decision on this shortcoming.

the petition for judicial review. The judgment below is, therefore,

*Affirmed.*