Starkweather v. HHS                    CV-94-100-B    2/21/95
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW HAMPSHIRE


Harrison H. Starkweather

     v.                                          No. 94-100-B

Donna E. Shalala, Secretary of
Health and Human Services


                          **O R D E R**

     Harrison Starkweather challenges a decision by the Secretary

of Health and Human Services ("Secretary") denying his

application for supplemental social security income.  He contends

that the Administrative Law Judge's ("ALJ") determination that

his residual functional capacity ("RFC") would allow him to

perform substantial gainful activity at a light exertional level

was not supported by substantial evidence.  He also asks that his

case be remanded for consideration of new medical evidence.  For

the following reasons, I affirm the Secretary's decision.


                     **I. BACKGROUND**[1]

     Starkweather suffers from heart disease and has been

_____

     [1]  Unless otherwise indicated, the facts are taken from the
stipulated facts filed jointly by the parties in response to the
court's order.

unemployed since June 1992. After experiencing symptoms of heart attack in June 1992, Starkweather was tested and diagnosed with recurrent angina. Following a left heart catheterization that revealed coronary artery disease, Starkweather underwent coronary artery bypass graft surgery of four arteries on July 6, 1992. Soon after surgery, he began experiencing chest and left arm pain. On July 27, he had a percutantious transluminal coronary angioplasty in which a balloon catheter is used to dilate particular blood vessels in order flatten plaque against the wall of the blood vessel. The procedure showed obstruction in three vessels, two of which were significantly improved by the angioplasty procedure, and also revealed severe disease in one of the vein grafts. Starkweather progressed well at first, but again began to experience chest pain which was treated with medication. His physical examinations during the period were essentially normal, and he performed adequately on a variety of stress and exercise tests.

After another severe episode of chest pain, Starkweather underwent catheterization again which revealed some occlusion but showed normal left ventricular function. The cardiologist determined that Starkweather was "well vascularized" and that the test showed no evidence that a significant area was ischemic,

2

that is restricted in blood flow. Starkweather was referred to his internist to determine alternative causes for his chest pain.

In March 1993, Starkweather was again treated for left arm and chest pain. A third catheretization in April disclosed coronary artery disease, but little threat to the heart muscle. The cardiologist recommended conservative treatment with medications but not surgery. The cardiologists treating Starkweather expected that he would continue to experience the same symptoms although they could not diagnose the cause because of the lack of medical evidence that his heart disease caused his symptoms. He was advised to continue his daily activities and to exercise as much as possible.

Starkweather applied for supplemental security income benefits on September 17, 1992. His application was denied initially and upon reconsideration by the Social Security Administration. After a hearing, the ALJ determined that Starkweather was not disabled and denied benefits in a decision dated August 23, 1993. Starkweather filed for review with the Appeals Council, requested that the record remain open for ninety days for additional evidence, and filed additional medical evidence during that period. On January 6, 1994, the Appeals Council denied Starkweather's request for review without

3

considering his additional evidence. Therefore, the administrative decision of August 23, 1993, became the final decision of the Secretary.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C.A. § 405(g), the court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In reviewing a Social Security decision, the factual findings of the Secretary "shall be conclusive if supported by 'substantial evidence.'" Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)). Thus, the court must "'uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Moreover, it is the Secretary's responsibility to "determine issues of credibility and to draw inferences from the record evidence," and "the resolution of conflicts in the evidence is for the Secretary, not the courts." Ortiz, 955 F.2d at 769. If the facts would allow different

4

inferences, the court will affirm the Secretary's choice unless the inference drawn is unsupported by the evidence. Rodriguez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988). However, the district court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C.A. § 405(g) (West Supp. 1994). The statute thus imposes three requirements -- newness, materiality, and good cause -- that must be satisfied before a district court may remand a case to the Secretary to obtain additional evidence. Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 139 (1st Cir. 1987).

## III. DISCUSSION

Starkweather first argues that the ALJ's determination that he is not disabled under the applicable regulations is not supported by substantial evidence. He also asks that his case be remanded to the ALJ to consider his new medical evidence, and he challenges the Appeals Council's decision not to review his case. I begin by addressing Starkweather's request for review of the

5

Appeals Council's decision and then turn to the other issues.

## A. **Appeals Council Decision**

When the Appeals Council decided not to review Starkweather's case, the ALJ's decision of August 23, 1993, became the final decision of the Secretary. 42 U.S.C.A. § 405(g); 20 C.F.R. § 416.1472. Compare Grace v. Sullivan, 901 F.2d 660 (8th Cir. 1990) (holding that Appeals Council's substantive decision, which modified ALJ's decision, was the final decision of the Secretary and was the only decision subject to judicial review). Because this court has authority to review only final decisions of the Secretary, I lack jurisdiction to review the Appeals Council's administrative decision not to review claimant's case. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In addition, because the Appeals Council declined to review the new evidence submitted by Starkweather, it remains new evidence in this case and must be considered under the appropriate standard.

## B. **New Evidence**

This court may order that additional evidence be taken before the Secretary, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding . . . ."  42 U.S.C.A. §405(g).  Therefore, to justify a remand, Starkweather must show that the medical evidence he has submitted meets three requirements:  newness, materiality and good cause.  Evangelista, 826 F.2d at 139.

Additional evidence is new if it is non-cumulative, factual, and has not been previously presented to the ALJ.  Id. at 139-40. There is no dispute that the proffered evidence is new because Starkweather's medical records concern events that occurred after the ALJ rendered his decision on August 23, 1993.  Similarly, "good cause" exists for Starkweather's failure to incorporate the evidence in the administrative record because the events precipitating the medical records had not occurred at the time of the hearing and the ALJ's decision in August 1993.  See Evangelista, 826 F.2d at 141-42; Bilodeau v. Shalala, 856 F. Supp. 18, 20-21 (D. Mass. 1994).

Evidence is material in this context if its inclusion in the record is necessary to afford the claimant a fair hearing because, if the evidence had been considered, the ALJ's decision might reasonably have been different.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991); Evangelista, 826 F.2d at 140.  The Secretary argues, in essence, that the medical records are not material because they pertain only to Starkweather's condition

7

after the decision date.  Starkweather contends that the new records are material because they demonstrate both the continuation and the seriousness of his condition.

To be material, the new evidence must pertain to Starkweather's condition at the time the ALJ made his disability determination and cannot concern a subsequent injury or disease. 42 U.S.C.A. § 416(i)(2)(G); Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987).  The new evidence offered by Starkweather consists of records of three hospital admissions and treatment: (1) September 26 to 30, 1993, for gastro-intestinal disturbance with bleeding diagnosed as duodenitis with hemorrhage; (2) October 7 to 15, 1993, for chest and arm pain diagnosed as "acute lateral non-transmural myocardial infarction secondary to acute occlusion of circumflex Y-graft to single circumflex margin"; and (3) January 15 to 18, 1994, for acute prolonged angina.

Starkweather argues that the ALJ might alter his conclusions if he were presented with this evidence because it suggests that Starkweather was more seriously impaired when he applied for benefits than the ALJ recognized.  Standing alone, however, this new evidence is insufficient to permit any reasonable person in the ALJ's position to alter his decision.  What is missing is any evidence demonstrating that the subsequent hospitalizations are

8

new evidence of a prior disability rather than evidence of an exacerbation or recurrance of a non-disabling prior impairment. Since a lay person is not qualified to interpret the evidence Starkweather relies on and he has not produced qualified medical opinion testimony to support the proposed interpretation, I conclude that Starkweather has not demonstrated that the new evidence is material. Cf. Geigle v. Sullivan, 961 F.2d 1395, 1397 (8th Cir. 1992); Lisa v. Secretary of HHS, 940 F.2d 40, 44-45 (2d Cir. 1991); Borders v. Heckler, 777 F.2d 954, 955-56 (4th Cir. 1985); Wilson v. Secretary of Health & Human Servs., 733 F.2d 1181, 1183 (6th Cir. 1984); Bilodeau, 856 F. Supp. at 20-21.

C. **The Disability Determination**

The ALJ applied the five-step sequential evaluation process required for an initial disability determination, 20 C.F.R. § 416.920 (1993), and made the following findings: (1) Starkweather had not engaged in substantial gainful activity since June 1, 1992; (2) he has a severe cardiac impairment; (3) his impairment is not listed in or medically equivalent to an impairment in Appendix No. 1, Subpart P, Regulations No. 4; (4) he is unable to perform his past relevant work as a mechanic and motel maintenance person; (5) given his limitations, Starkweather can perform jobs such as a security guard, fast-food order clerk,

auto photo finisher, toll collector, cashier, or assembler, which exist in number in excess of four million in the national economy. The ALJ concluded that Starkweather was not disabled within the meaning of the applicable regulation.

Starkweather's appeal focuses on the fifth step of the ALJ's evaluation process. He argues that substantial evidence does not support the ALJ's determination of his RFC to perform the jobs she listed because she failed to properly assess the incapacitating effects of his pain. In particular, he contends that the ALJ did not give sufficient consideration to the location, duration, frequency, and intensity of his pain. See 20 C.F.R. 416.929 (1993).

For the ALJ to find that pain has a significant effect on a claimant's capacity to work, the record must show evidence of a medically determinable impairment which could reasonably be expected to cause pain of the intensity reported. 20 C.F.R. 416.929(b) (1993); Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 27 (1st Cir. 1986). Subjective complaints of pain and fatigue are evaluated in light of all the evidence. 20 C.F.R. 416.929(a); Avery, 797 F.2d at 23. In determining the weight to be given to a claimant's testimony, "complaints of pain need not be precisely corroborated by objective findings, but

they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). Factors to be considered in evaluating a claimant's testimony of pain include:

> (i) [Claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [his] pain and other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [claimant] takes or [has] taken to alleviate [his] pain or other symptoms;
> (v) Treatment, other than medication, [claimant] receives or [has] received for relief of [his] pain or other symptoms;
> (vi) Any measures [claimant] uses or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.919(c)(3). If the ALJ has considered all relevant evidence of claimant's pain, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

The ALJ found that Starkweather's testimony about his limitations, including pain, was generally credible. She

11

accepted his report that he could walk but would have to take medication if he walked for long periods and that he could not climb or engage in repetitive overhead reaching. She also credited his need to be able to sit and rest at will due to fatigue. Based on Starkweather's own testimony and that of his wife concerning his daily activities and his limitations, the ALJ determined that while Starkweather was unable to do strenuous physical activities, he was able to perform lighter activities of daily life such as laundry, light cooking, shopping for groceries, and driving in a car. Because Starkweather did not report deleterious side effects from his medications, the ALJ concluded that his medication regimen was effective in controlling his symptoms without affecting his work capacity.

Starkweather now argues that he experiences severe chest pain attacks at least two or three times a day that prevent him from focusing on events occurring around him and require him to lie down to rest after each episode. He contends that because of the severity of his episodes of pain and need to rest, he is disabled from all work and that the ALJ erred in not crediting his complaints of pain. Thus, he challenges the ALJ's reliance on the hypothetical to the vocational expert that Starkweather's RFC allowed him to perform light work with no repetitive overhead

12

reaching, no prolonged walking, no climbing, minimal report writing and the opportunity to sit at will.  Starkweather contends that another hypothetical posed by the ALJ was more appropriate because it included a restriction that he be allowed to rest two times a day for a period of fifteen to forty-five minutes on an unpredictable basis.  On that hypothetical, the vocational expert testified that none of the jobs would be available.

Substantial evidence exists in the record to support the ALJ's reliance on the first hypothetical allowing Starkweather to sit at will but without the longer rest component.  Starkweather testified that the night before the hearing in August 1993 he experienced chest pain while cooking hamburgers and was able to control the pain by taking a nitroglycerin pill and sitting down.  He said that most of his pain episodes were of medium intensity and passed within five to six minutes of taking medication.  He also said that he had fewer episodes when he stayed at home just reading the paper or watching television.  When asked what would prevent him from performing a job like that of a sedentary security guard, Starkweather responded that just sitting would be hard on his nerves.  At the hearing, Starkweather did not indicate that his chest pain episodes would interfere with that

13

type of work.  Instead, the only evidence in the record suggesting that Starkweather needed to lie down to rest after a pain episode related to a brief period in August 1992 following his heart surgery in July 1992.

The ALJ found Starkweather's allegations of fatigue and pain were generally credible but that his allegations did not establish that he was disabled by his condition.  She concluded that his RFC would allow him to perform light work without requirements for prolonged walking or climbing, repeated over-head reaching or more than minimal report writing, but would permit him to sit at will.  Based on Starkweather's age, educational background, and physical limitations, the vocational expert identified jobs, which he could do, that existed in significant numbers in the national economy.  The ALJ concluded that Starkweather was not disabled within the statutory definition.  I find substantial evidence in the record to support the ALJ's conclusion.

## IV. CONCLUSION

For the foregoing reasons the government's motion to affirm the Secretary's decision (document no. 9) is granted and the

14

claimant's motion for order reversing or remanding the decision (document no. 8) is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 21, 1995

cc: David Broderick, Esq.
Ellen Musinsky, Esq.