USCA1 Opinion

 

 September 25, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1049  DENISE N. MERCIER, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Remington O. Schmidt on brief for appellant. ____________________ Jay P. McCloskey, United States Attorney, David R. Collins, __________________ __________________ Assistant United States Attorney, and Robert J. Triba, Assistant ________________ Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Denise N. Mercier, claimant, appeals a __________ final decision by the Secretary of Health and Human Services that she does not qualify for disability benefits under the Social Security Act, 42 U.S.C. 402(g). The district court granted judgment in favor of the Secretary. We affirm the district court's decision.  Background __________ Claimant filed for disability benefits on July 3, 1990, alleging that she has been disabled from work since October 15, 1982. The Secretary determined, and claimant does not dispute, that she was fully insured only through December 31, 1987. The Administrative Law Judge ("ALJ") held a hearing and heard testimony from the claimant, a consulting physician and a vocational expert. Claimant was represented by an attorney. Claimant alleges that she suffers from post-polio syndrome,1 and claims that she is wholly disabled as a  ____________________ 1. Post-polio syndrome is described by the Secretary in the Program Operations Manual System (POMS) as follows: For the purposes of evaluation under the disability programs, the late effects of polio refer to new symptoms and neuromuscular manifestations which result in new functional loss in an individual with a prior history of acute polio. This functional loss typically occurs after a long period (more than 10 years and generally 20-40 years) of stability. The etiology of these problems is not yet known and not all polio survivors experience these late effects. Precise data are not yet available, but it may be that about 25 percent of the estimated 300,000 or more surviving individuals who had polio are experiencing new problems affecting their ability to carry out accustomed activities. These late neuromuscular effects are permanent and usually -2- result. Whether in fact she suffers from this syndrome was not determined by the ALJ or the district court, and indeed need not be decided for a resolution of the disability issues presented by this appeal. The record is clear that claimant had polio as a young child. Less clear are the medical and vocational implications of post-polio syndrome. The ALJ found that claimant's symptoms, as described, did not meet or equal the listed impairments at 20 C.F.R. Part 404, Subpart P, App. 1. He found claimant not disabled at step 5 of the sequential evaluation process, 20 C.F.R. 404.1520(f), on the ground that while claimant has a severe impairment which prevents her return to her past relevant work, she retains the residual functional capacity for some types of sedentary work. Accordingly, the ALJ applied Rule 201.27 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grid") as a framework and relied as well on vocational testimony to reach a finding of not disabled. Although claimant submitted additional evidence to the Appeals Council, the Appeals Council refused review.  Claimant appealed to the district court, which affirmed the Secretary. This appeal followed.  ____________________ slowly progressive. There is no known treatment. POMS DI 24580.010 -3- Discussion __________ Claimant makes six arguments on appeal. We address each in turn and incorporate facts and medical evidence as needed. "`We must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Secretary of Health and Human _______ _____ _____________________________ Services, 955 F.2d 765, 769 (1st Cir. 1991), quoting ________ Rodriguez v. Secretary of Health and Human Services, 647 F.2d _________ ______________________________________ 218, 222 (1st Cir. 1981).  1. Claimant argues first that her impairment meets two of the listed impairments at 20 C.F.R. Part 404, Subpart P, App. 1: Listing 1.03(A)2 and Listing 11.04(B)3. Claimant was diagnosed with polio as a child, in 1955. She had three surgeries on her right foot and ankle, including a  ____________________ 2. 1.03 Arthritis of a major weight-bearing joint (due to __________________________________________________ any cause): __________ With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With: A. Gross anatomical deformity of hip or knee (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand. 3. 11.04 Central nervous system vascular accident . With ___________________________________________ one of the following more than 3 months post-vascular accident: ... B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station....  -4- right ankle fusion in July, 1968. Her argument as to Listing 1.03(A) is that "it is obvious common sense that the ankle area is equivalent for this purpose to the hip and knee areas." Appellant's Brief, p. 14. Claimant makes this argument despite the fact that at the hearing the ALJ asked the medical expert just this question, and was told that claimant's circumstances "wouldn't equal" the listing requirements. A-II, 87-88. Claimant insists that under Gordils v. Secretary of Health and Human Services, 921 F.2d _______ _______________________________________ 327, 329 (1st Cir. 1990), the Secretary "is [not] precluded from rendering common sense judgements [sic] about functional capacity based on medical findings as long as the Secretary does not overstep the bounds of a layperson's competence and render a medical judgement [sic]." Gordils is inapposite. By its terms, it concerns _______ the qualification of an ALJ to assess residual functional capacity based on a bare medical record. Moreover, it is expressly not pertinent to the situation presented here, where a medical professional gave an opinion on a medical issue, and appellant would have the ALJ displace that opinion ________ as a matter of "common sense." As to Listing 11.04(B), claimant argues that the record evidence in fact establishes that both of her legs are affected. She cites to medical reports which relate her intermittent and subjective complaints of pain or weakness, -5- e.g., report of Jeffrey Eaton, 4/1/91, A-II, 199; or which ___ reflect objectively that her left leg, too, is weak. E.g., ___ report of William C. Meade, M.D., 3/5/92, A-II, 207.4  However, even if two extremities were involved, claimant makes no argument about the balance of Listing 11.04(B): "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station...." No record evidence supports a finding to this effect. Dr. Meade indicated that claimant has "an obvious Trendelenburg gait," A-II, 205, but Dr. Kaminow concluded that while the gait is "somewhat antalgic ... there is no imbalance," id. at 25, and __ Dr. Hull found only a "mild dyssymmetry [sic] of gait," id. __ at 21. We agree that there is insufficient medical evidence to show that claimant meets this listing.  2. Claimant argues next that the district court should have remanded the case so that she could augment the record with medical records of her former treating physician, Roger Robert, M.D. Dr. Robert treated claimant in the 1950s, 1960s and 1970s, and, despite the fact that he was under subpoena to do so, apparently failed to transmit all of his records to the ALJ in time for the hearing. Some of  ____________________ 4. At least one other report reflects that, as of March 1991, "[s]trength was entirely intact in the left lower extremity...." Report of Kathryn D. Seasholtz, D.O., 3/6/91, A-II, 197. -6- these records were before the ALJ; the remainder are now available, and claimant argues that she is entitled to a remand to have the ALJ consider them. Pursuant to 42 U.S.C. 405(g), remand is proper only upon a showing "that there is new evidence which is material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Evangelista v. Secretary of Health and Human ___________ ______________________________ Services, 826 F.2d 136, 139 (1st Cir. 1987). The only issue ________ before the district court, and before us, is whether the proffered evidence is material; that is if, were it considered, the Secretary's decision "`might reasonably have been different.'" Id. at 1140. ___ The Magistrate found, and the district court agreed, that the medical records in question:  antedate by many years the plaintiff's alleged onset disability date; they do not relate at all to the Secretary's inquiry as to whether the plaintiff was disabled after October 15, 1982. To the extent that the medical records establish a medical history of polio, and thereby establish the predicate for her current claim of post-polio syndrome, I note that the Administrative Law Judge fully credited her history of polio. Report and Recommended Decision, p. 4. We agree fully. Claimant was not denied disability benefits because the ALJ did not credit her (otherwise documented) history of polio, but, rather, because there was insufficient evidence of any -7- disabling restrictions during the relevant period, and there was affirmative evidence that despite her limitations, claimant was able to perform some types of work. Claimant has failed to show that the additional evidence would likely have made any difference. 3. In her third argument, claimant alleges that she was denied her right to testify as to why the records of Dr. Frank, a physician who has treated her since 1981 (A-II, 62), are silent concerning post-polio syndrome. Apparently, claimant would have testified that she had tried to raise the issue with Dr. Frank, but he ignored her. See A-II, 78-79. ___ In fact, claimant testified on two occasions that she raised concerns with Dr. Frank. She said first that she had mentioned to him that she had post-polio syndrome, but that he was unfamiliar with it (A-II, 62); and later that she had discussed some symptoms with Dr. Frank and "the only thing [he keeps] telling me is there's nothing they can do for me." Id. at 79.  __ Claimant concludes that the ALJ "held the lack of post-polio syndrome references in Dr. Frank's notes against [her]...." Appellant's Brief, p. 22. This is not a wholly accurate description of the ALJ's finding. The ALJ's Decision reflects that: Dr. Frank's treatment notes do not make reference to any significant complaints relating to post-polio syndrome. ... With a view toward deciding this case in a -8- light most favorable to the claimant, a conclusion will nevertheless be reached that on or before the date her insured status expired, the symptoms associated with post-polio syndrome was [sic] severe as they likely affected Ms. Mercier's ability to perform highly strenuous work activities on a sustained basis. A-II, 41. The record shows that claimant was able to testify on two occasions that Dr. Frank was unable to help with her problem. Had she been permitted to testify in addition that he ignored her, it is difficult to see how her case would have been advanced. Insofar as she is complaining about the ALJ's reliance on the general absence in the record of contemporaneous evidence of complaints of pain, that argument is addressed infra.  _____ 4. Claimant's fourth argument seems to be that her due process and confrontation clause rights were violated when the ALJ did not permit her attorney to ask the vocational expert ("VE") to "zero in" on the problems she had in performing her volunteer work. The attorney evidently hoped to undermine the VE's testimony that there were jobs in the economy claimant could perform by introducing evidence that claimant had great difficulty with even the extremely limited and occasional volunteer work she undertook at a school library. The ALJ did not permit this, observing instead that "[i]f we take all of her testimony, then she can't do any work." A-II, 97.  -9- The ALJ concluded, in effect, that introduction of claimant's particular volunteer work limitations would add nothing to the hypotheticals he had posed to the VE, which already took into account substantial limitations, both objective (reflected in the medical records) and subjective (as described by claimant.) We perceive no error. As indicated below, the hypotheticals were properly based on record evidence, and claimant's proffered questions, based on her own subjective complaints, were properly excluded.  5. In her fifth argument, claimant alleges that the ALJ, in his hypotheticals to the VE, and in reaching his ultimate conclusion that there were jobs claimant could perform,5 did not take into account all of claimant's limitations as reflected in Dr. Meade's report, the only medical report of record addressing work-related activities.6 "[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are  ____________________ 5. Once it is established that a claimant cannot perform past relevant work, the burden shifts to the Secretary to show that there are jobs claimant can perform. Arocho v. __________ Secretary of Health and Human Services, 670 F.2d 374, 375 ________________________________________ (1st Cir. 1982). 6. Dr. Meade's report, dated March 10, 1992, post-dated by over four years the expiration of claimant's insured status. Nonetheless, the ALJ considered Dr. Meade's assessment of claimant's functional limitations "pertinent," (A-II, 45) and directed the Vocational Expert to assume that claimant's residual functional capacities at the time of the hearing approximated those of 1987. A-II, 92.  -10- supported by the outputs from the medical authorities." Arocho v. Secretary of Health and Human Services, 670 F.2d ______ ________________________________________ 374, 375 (1st Cir. 1982). "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." Id. __ Claimant takes issue particularly with the assumption that she could sit for one hour and with the ALJ's failure to emphasize to the VE that she could stand, walk or sit for a total of four hours during the course of a work day. Appellant's Brief, p. 25.  We have compared Dr. Meade's report, the claimant's own testimony and her disability application with the information given the VE at the hearing, and we conclude that the ALJ accurately described claimant's limitations in his hypotheticals. Claimant testified that she generally sits and watches television for an hour at a time. A-II, 56. On a daily basis, she makes lunch, does light housekeeping and some shopping. Id., 56-57. Her "disability report" - filed __ as part of her initial application for benefits - indicates that she daily spends 45 minutes to an hour and a half cooking; does a load of laundry; sweeps; and drives when -11- necessary. Id. at 126. We find no error in the assumptions __ given the VE by the ALJ.7 6. Claimant's final argument is that the ALJ neglected to credit sufficiently her complaints of pain, and did not properly apply the standards set out in Avery v. _____ Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. ______________________________________ 1986). She argues specifically that under Avery, the ALJ _____ cannot disregard complaints of pain which are consistent with the medical findings and diagnosis. Appellant's Brief, pp. 27-28. We have construed Avery to mean that "complaints of _____ pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Services, 869 F.2d ______ _______________________________________ 622, 623 (1st Cir. 1989). "`[I]f an impairment is reasonably expected to produce some pain, allegations of [disabling] ____ pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.'" Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th ______ ________ Cir. 1991) (emphasis in original; citation omitted). In assessing complaints of pain:  Some of the possible factors include: the levels of medication and their  ____________________ 7. We note as well that the Appeals Council, which rendered the Secretary's final decision, had before it an additional work capacity evaluation which is far more detailed than the earlier report of Dr. Meade, and which pronounces claimant considerably more able. A-II, 7-19.  -12- effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities [and] subjective measures of credibility that are peculiarly within the judgment of the ALJ.... Id. Gaps in the medical records are themselves evidence. __ Irlanda Ortiz v. Secretary of Health and Human Services, 955 _____________ _______________________________________ F.2d 765, 769 (1st Cir. 1991). We assume solely for purposes of this appeal that claimant suffers from post-polio syndrome, and that post- polio syndrome is an impairment which can reasonably be expected to produce pain, although we note that the record is by no means clear on the second point. In evaluating the severity of claimant's pain, the ALJ observed: Although the claimant stated that she is incapable of working due to many symptoms which she relates to post-polio syndrome, there is little evidence to support a finding that Ms. Mercier complained of such difficulties to her physicians at the time her insured status expired. ... If [the] claimant's condition were as bad in 1987 as she now contends it was, it is likely that she would have made many complaints to her treating physician. A-II, 44-45.  The ALJ found that claimant's assertions concerning her impairment and its impact on her ability to work on and before the date her insured status expired "[were] not credible in light of the claimant's own description of her activities, and discrepancies between the claimant's -13- assertions and information contained in the documentary medical reports." Id. at 47.  __ The ALJ's credibility determination "is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health and Human Services, 829 __________ _________________________________________ F.2d 192, 195 (1st Cir. 1987). Accordingly, we find there is substantial evidence in the record to support the Secretary's decision. Affirmed. ________ -14-