**Marjorie L. DEWEY, Plaintiff**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 95–12791–GAO.**

United States District Court, D. Massachusetts.

Sept. 18, 1996.

---

Marjorie L. Dewey, Shirley, MA, pro se.

Rayford A. Farquhar, U.S. Attorney, Boston, MA, for Shirley Chater.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff Marjorie L. Dewey, acting *pro se*, appeals from a final decision by the Commissioner of the Social Security Administration to deny her disability benefits. The administrative record substantially supports the Commissioner's decision, and the Court affirms it.

### I. FACTS

Marjorie Dewey is a thirty-eight year old widow with two children. She graduated from high school and has completed two years of additional education in bookkeeping and accounting. At the time of her application for benefits, she lived with her parents and children in Shirley, Massachusetts.

Dewey claims that her initial disability stemmed from an injury sustained to her right foot when she fell off an Amtrak train on July 13, 1992. (R. at 38, 85.) X-rays after the fall revealed only a small calcaneal spur on the right foot and no substantial injury to the ankle. (R. at 129.) The examining doctor concluded that Dewey had suffered only a sprain and prescribed Motrin for her, gave her crutches, and excused her from work until July 16, 1992. (R. at 129–31.) Dr. Anthony Caprio examined her and her x-rays a few days later and reached a similar conclusion. (R. at 164.) Dewey's condition seemed to improve from an objective standpoint, although she experienced continuing pain and had a bony exostosis removed from

the foot in November 1992. (R. at 158–62.) Dr. Caprio's post-surgical examination in December found the surgery successful and indicated that she should be able to return to work shortly. Dewey, however, now complained of a new pain, described by Dr. Caprio as "a burning sensation and tingling over the dorsum of the foot." (R. at 156.)

Dewey's medical complaints began to multiply in 1993. Her foot pain worsened and she was walking with a cane. She asserted that she had also injured her back in the Amtrak fall and that she had a long history of chronic postural backaches. She claimed to be suffering from a host of general pains and aches in her foot, legs, knees, left arm, and back. Medical examinations by Drs. Caprio, Robert Beck, and Gary Stanton revealed a minimally bulging disk at L5–S1 with no compromising of the spinal canal or lateral recesses, and a possible indication of carpal tunnel syndrome in her left arm, but little else. (R. at 118, 146–56.) At some point, however, Dr. Beck concluded that Dewey was under a complete disability, although he could not judge whether it would be temporary or permanent.[1] (R. at 185–86.) Over time, her list of medical complaints has expanded to include a wide array of ailments affecting her entire body, most especially her foot, hands, back, legs, ears, and eyes.[2]

Dewey had an extensive work history that dated to 1975 and included such positions as office worker, operations clerk, gluer, mold extruder, and delivery driver. She also had experience with computers and bookkeeping. When she injured her foot in July 1992, Dewey was working as a pizza delivery driver, and she apparently continued in that until March 1993. She also worked briefly for the Internal Revenue Service for a time in mid–1994.

Dewey applied for disability insurance benefits on May 5, 1993.[3] After evaluating her claims and the underlying medical evidence, the Social Security Administration ("SSA") denied the application both initially and on reconsideration. Dewey then brought her case before an Administrative Law Judge ("ALJ"), who held a hearing on October 18, 1994. In a decision issued December 19, 1994, the ALJ also determined that Dewey was not entitled to disability benefits. Dewey then requested a review of the decision by the SSA Appeals Council. The Appeals Council denied the request on September 8, 1995, thereby allowing the ALJ's decision to stand as the Commissioner's final administrative decision on the matter. (R. at 4.) Dewey now seeks review of this decision in this Court.

## II. DISCUSSION

■ A social security claimant aggrieved by a final decision of the Commissioner to deny her benefits may seek review of the decision in the United States District Court in which she resides. 42 U.S.C. § 405(g). In reviewing the administrative decision, a court may base its decision solely upon the pleadings and transcript of the administrative record. Furthermore, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Id.*

Dewey generally challenges the ALJ's findings and conclusions. She asserts that she suffers from debilitating pain and other conditions that prevent her from working. In support of her claim, Dewey relies on Dr. Beck's letter saying she is disabled and her

---

1. The letter in which Dr. Beck states this conclusion is undated, but it refers to Dewey's employment in April and May 1994, so it was obviously written after that time.

2. In her most recent submission, Dewey claims to suffer from the following conditions: Fibromyalgia; Osteo–Arthritis; Reflex Sympathetic Dystrophy of the right leg and foot; Bilateral Carpal Tunnel Syndrome; Lordosis; Scoliosis; Bulging Disk between L5–S1; Chronic Fatigue Syndrome; Ulnar Nerve Damage to the right elbow; Edema of the hands, feet, and other joints; Bilateral Sciatica; chronic severe pain; moderate to severe hearing loss in the left ear; Borderline Glaucoma; Night Blindness; Hysterical Tunnel Vision; Asthma; Chronic Bronchitis; chronic left ear infections; Hypoglycemia.

3. She initially claimed her disability began with the foot injury in July 1992, but after the Administrative Law Judge pointed out that she had actually worked through March 1993, she accepted the opportunity to amend the claim to assert a disability commencing as of March 15, 1993.

own experience with pain and the way it has interfered with her life, including her unsuccessful attempts to return to work. In the end, however, it appears that the administrative record provides ample support for the ALJ's decision, and it must accordingly be affirmed.

A disability, as defined by the statute, means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A person is considered to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). In addition, to be eligible for benefits, an individual must be insured for disability insurance benefits as defined at 42 U.S.C. § 423(c)(1).

When evaluating a claim under 42 U.S.C. § 423(d) to determine benefits eligibility, the SSA essentially asks five sequential questions. First, is the individual currently employed? Second, does the individual have a "severe impairment"? Third, does the individual have an impairment equivalent to the list of specific impairments contained in 20 C.F.R. pt. 404, subpt. P, app. 1? Fourth, does the individual's impairment prevent her from performing work of the kind she has done in the past? Fifth, does the claimant's disability prevent her from performing other work of the sort found in the economy? *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982).

The first three inquiries constitute a threshold test. An affirmative answer to the first or a negative answer to the second renders the individual automatically ineligible for benefits, while an affirmative answer to the third means that the individual is automatically eligible for benefits. The threshold questions are not disputed in this appeal. The ALJ found Dewey's ankle injury to be severe and acknowledged that she was not working at the time of the appeal.[4] As to the third, there is no evidence that Dewey's alleged impairment corresponds to any listed in Appendix 1.

Where eligibility has not been decided at the threshold, the inquiry moves on to the last two questions. Answering these questions requires a determination of the claimant's "residual functional capacity," that is, what a claimant can still do despite her physical or mental impairments. The regulations and applicable case law call for consideration of all relevant medical and non-medical evidence, including medical records, observations by examining physicians, evaluations of the medical evidence by non-examining physicians, and the testimony of the claimant and others who have observed her. 20 C.F.R. §§ 404.1529, 404.1545 (1995); *see also Avery v. Secretary of Health and Human Servs.*, 797 F.2d 19 (1st Cir.1986).

As the ALJ found, the medical record, including the repeated examinations and evaluations by her two primary treating physicians, Drs. Beck and Caprio, lacks objective evidence of the disabilities she claims. Dr. Beck does state in his undated letter addressed "[t]o whom it may concern" that he "support[s] Ms. Dewey's petition for complete disability at this time." (R. at 186.) Dr. Beck adds, however, that he "cannot judge whether this would be a temporary or permanent situation." *Id.* More significantly, as the ALJ noted in discussing this letter, Dr. Beck described no objective findings supporting this opinion. (R. at 10, 185–86.) The conclusion expressed summarily in the letter

---

4. The ALJ noted that Dewey had worked on a temporary basis for the Internal Revenue Service in April 1994, and that she had earned $7,925.00 in 1993. The ALJ nonetheless accepted for the purposes of her decision that everything after March 15, 1993, represented unsuccessful work attempts. (R. at 10.)

is not reflected in any medical records of Dr. Beck's evaluation or treatment of Dewey.

On the basis of the medical evidence in the record, as well the testimony of a vocational expert who identified a wide range of jobs Dewey could still perform, the ALJ concluded that Dewey could handle a full range of sedentary work. With regard to Dewey's subjective assertions of disabling conditions, the Court notes that the ALJ found Dewey and her complaints of debilitating pain to be largely incredible. She noted repeated contradictions between what Dewey claimed to be able to do and what she did or seemed capable of doing[5] and expressed the belief that the disability case was motivated at least in part by Dewey's on-going suit against Amtrak relating to the initial incident. (R. at 11–12.) Those findings are not clearly erroneous. Moreover, even if the subjective complaints had been found wholly credible, Dewey's statements alone could not have been conclusive evidence of a disability. 42 U.S.C. § 423(d)(5)(A); *Avery,* 797 F.2d at 20–21; *McKeon v. Shalala,* 876 F.Supp. 351, 355 (D.Mass.), *aff'd,* 70 F.3d 1252 (1st Cir.1995).

It is true that Dr. Beck's opinion might have substantiated a disability finding. But where the ALJ's decision is supported by substantial evidence, this Court is bound to affirm that decision, "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Secretary of Health and Human Servs.,* 819 F.2d 1, 3 (1st Cir.1987) (*per curiam*), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988).

Finally, Dewey has submitted new materials to this Court not presented to the ALJ. The most noteworthy of these additional papers are a January 12, 1995 letter from Dr. Beck, an undated report of an October 16, 1995 psychological evaluation, a letter from her new landlady regarding her health, a January 23, 1996 functional evaluation, the results of hearing evaluations done in January and March 1996, and Dr. Beck's certification that Dewey qualified for a Handicapped Placard for her automobile. The First Circuit has held that new material may warrant a remand for reconsideration where that evidence would meaningfully alter and cast doubt on the sufficiency of the administrative record. *Evangelista v. Secretary of Health and Human Servs.,* 826 F.2d 136, 139–40 (1st Cir.1987); *Falu v. Secretary of Health and Human Servs.,* 703 F.2d 24, 27 (1st Cir.1983); 42 U.S.C. § 405(g) (permitting the court to remand the case for additional evidence to be taken, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record"). Those circumstances do not exist here. The ALJ discounted a similar letter from Dr. Beck earlier, and the fact that he certified Dewey for the special placard is of no moment. Neither the psychological evaluation nor the hearing test raise material issues regarding her claimed disability. The letter from the landlady similarly casts no substantial doubt on the ALJ's decision. The functional evaluation only seems to confirm what most of the doctors have been saying—that Dewey has subjective complaints of pain that do not manifest themselves in an objectively measurable or wholly consistent way. (Docket # 10 at 4–8.)[6] In short, there is nothing in these new submissions that warrants a remand for reconsideration of Dewey's alleged disability.

For the foregoing reasons, the decision of the Commissioner to deny Dewey disability benefits is AFFIRMED.

---

5. Dewey points out that the ALJ mistakenly wrote that Dewey crochets when she in fact does needlepoint work. Dewey is correct, but the error is immaterial. A revised finding would still support the ALJ's observation that such a hobby conflicts with a claim to be suffering from carpal tunnel syndrome.

6. The evaluation even seems to bolster the ALJ's decision. According to it, Dewey reported working at the Internal Revenue Service for five months a year, and the testing showed she was capable of sitting for at least fifty minutes at a stretch without complaint.