**Adalberto CORDERO, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 94–40173–NMG.**

United States District Court, D. Massachusetts.

June 4, 1996.

Steven E. Zlochiver, Legal Assistance Corporation of Central Massachusetts, Worcester, MA, for Adalberto Cordero.

Charlene A. Stawicki, United States Attorney's Office, Boston, MA, for Donna E. Shalala.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is a review of the final decision of the Commissioner of Health and Human Services ("the Commissioner") under the Social Security Act, as amended, 42 U.S.C. § 405(g). In that decision, the Commissioner denied to the plaintiff, Adalberto Cordero ("Cordero"), Supplemental Security Income benefits based on disability ("SSI") under the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act").

On March 28, 1991, Mr. Cordero filed an application for SSI. His application was initially denied on June 18, 1991, and denied again on Reconsideration on October 15, 1991. On February 28, 1992, Mr. Cordero filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On July 14, 1993, an ALJ, after considering the case *de novo*, determined that although Mr. Cordero met the disability insured status of the Act through June 30, 1991, he was not disabled thereafter. On July 29, 1993, the Appeals Council denied Mr. Cordero's request for review. That decision rendered the July 14, 1993 ALJ decision the final decision of the Commissioner, subject to review by this Court. *See Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 25 (1st Cir.1986).

Mr. Cordero seeks a reversal of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g), which provides, *inter alia*, that:

> [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

Mr. Cordero contends that the final decision of the Commissioner was neither supported by substantial evidence nor in accordance with law. Mr. Cordero therefore requests that this Court reverse the final decision of the Commissioner, or, in the alternative, remand the case for further testimony regarding Mr. Cordero's residual functional capacity ("RFC").[1] For the reasons stated herein, the decision of the Commissioner will be affirmed.

## I. BACKGROUND

Mr. Cordero was born on April 23, 1949. He has a sixth grade education, but can only read and write in Spanish. He has variously worked as a laborer, maintenance worker, and security guard. He claims to be disabled by a back injury.

Mr. Cordero first injured his back in 1979 while lifting heavy bottles. He underwent physical therapy for lower back pain in January and February, 1982. In April, 1982, an examination revealed that Mr. Cordero could straight leg raise 45 degrees to the left and 20 degrees to the right. He was diagnosed with lower back pain.

In May, 1982, and again in November, 1983, Mr. Cordero underwent more physical therapy. His back was examined again in January, 1984, and he was diagnosed with chronic low back sprain and disc involvement. On January 24, 1984, he underwent a neurosurgical consultative examination and additional physical therapy. He was diagnosed with acute, recurrent low back sprain.

A February, 1984, examination revealed that Mr. Cordero's back pain had decreased, and he could straight leg raise 30 degrees to the right and 90 degrees to the left. He was again diagnosed with chronic low back pain. A June, 1984, examination resulted in another diagnosis of chronic low back pain.

In May, 1985, Mr. Cordero re-injured his back lifting a television set while working as a maintenance worker at a hotel. He underwent another examination, in which he could straight leg raise 45 degrees to the right and 30 degrees to the left. He was diagnosed with acute lumbar strain. Later that month, Mr. Cordero aggravated his back injury by shoveling metal chips. He was examined for back and knee pain, and diagnosed with back and left knee strain. Follow-up exams in June and July, 1985 resulted in the same diagnosis.

A September, 1985, examination revealed that Mr. Cordero had some hyperesthesia and a somewhat limited range of motion, and could straight leg raise 50 degrees to the left and 70 degrees to the right. He also suffered from atrophy of the left calf. Once again, he was diagnosed with chronic low back sprain.

Later that month, Mr. Cordero was examined by orthopedic surgeon Dr. Ivan M. Spear, in connection with a workers' compensation claim. Dr. Spear found that Mr. Cordero's gait was satisfactory, he could heel to toe walk, he had no motor weakness, and had good pulses and reflexes. Dr. Spear further found that although Mr. Cordero had some limitation of motion, his straight leg raising was not limited and his Burn's test was equivocal. He diagnosed Mr. Cordero with discogenic low back strain, with no evidence of nerve root compression. He expected Mr. Cordero would make a full recovery, and opined that he could perform light work, without bending or lifting for twelve weeks.

In October, 1985, Mr. Cordero underwent more physical therapy. In March, 1986, Dr. Spear again examined Mr. Cordero, and found that although he ambulated cautiously, he had no atrophy or spasm. He further

---

1. For purposes of this decision, the Court has relied upon the entire administrative record, the defendant's memorandum in support of her motion for an order affirming the decision of the Commissioner, and Mr. Cordero's memorandum in support of his motion to remand the decision of the defendant.

found that although Mr. Cordero had some limitation of motion in his back, his straight leg raising was not limited when seated, and only slightly limited when supine. Dr. Spear was of the opinion that Mr. Cordero did not suffer from a condition that would limit him from engaging in a full range of activity.

In April, 1988, Mr. Cordero, after twice falling down a flight of stairs, was examined for low back pain. A neurological examination revealed normal results, with some tenderness and limitation of motion. Mr. Cordero was diagnosed with back pain. Two weeks later, an examination revealed normal gait, posture, and reflexes. Mr. Cordero had difficulty heel to toe walking, however, and could only straight leg raise 10 degrees. He was diagnosed with low back strain and sciatic radiculitis.

A May, 1988, examination revealed good reflexes, motor power, sensation, and gait, with no spasm, guarding, or atrophy. Mr. Cordero was able to heel to toe walk, and could straight leg raise 30 degrees to the left and 40 degrees to the right. He was diagnosed with lower back sprain.

In August, 1988, Mr. Cordero was again referred to physical therapy. A December, 1988, CT scan of his lumbosacral spine revealed an annulus bulge at disc L4–5, and degenerative disease. A physical examination performed on the same day revealed a spur on the anterior superior border on disc L5.

In 1989, Mr. Cordero was prescribed Relaxin, Talwin and a lumbar support. In May, 1991, Dr. Spear performed a consultative examination on Mr. Cordero for the Disability Determination Services ("DDS"). Dr. Spear found normal gait, ability to heel to toe walk, good muscle power, pulses, and reflexes, and no limitation in straight leg raising. Dr. Spear opined that Mr. Cordero would be able to lift 25 to 30 pounds occasionally, and could perform all kinds of light work, as long as that work did not require "unduly long standing," and he was "able to change his position periodically."

In October, 1992, a neurological examination revealed that Mr. Cordero suffered from pain with movement and palpitation of the paraspinal area. He was diagnosed with lumbosacral degenerative joint disease and muscle strain.

At his hearing, Mr. Cordero testified that he was unable to walk for more than thirty minutes, could not sit or stand for more than twenty minutes, could not bend, and could not lift more than ten pounds. Furthermore, his back pain was aggravated by climbing stairs. He also testified that he read occasionally, watched television frequently, visited and was visited by friends, and had recently visited his father in Puerto Rico for three weeks. Finally, in a "Disability Report," Mr. Cordero stated that he shopped and did housework, and visited his cousin often.

## II.  ANALYSIS

### A.  Standard of review

■ Pursuant to 42 U.S.C. § 405(g), review of a final decision of the Commissioner is limited. Factual findings by the Commissioner must be affirmed if they are supported by substantial evidence in the record and are in accordance with the law. *Id.; Irlanda Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1st Cir.1991). This Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole could accept it as adequate to support [her] conclusion." *Irlanda Ortiz,* 955 F.2d at 769 (quoting *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981)). *See also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ Even if the record could be perceived to support other conclusions, the final decision of the Commissioner must be upheld if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). It is the responsibility of the Commissioner, not the reviewing court, to determine issues of credibility, draw inferences from the record and resolve conflicts in the evidence. *Irlanda Ortiz,* 955 F.2d at 769; *Evangelista v. Secretary of*

*Health and Human Services,* 826 F.2d 136, 141 (1st Cir.1987).

## B. *Legal analysis*

### 1. *Disability determination*

■ To establish an entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Act. *Bowen v. Yuckert,* 482 U.S. 137, 146–47 & n. 5, 107 S.Ct. 2287, 2293–94 & n. 5, 96 L.Ed.2d 119 (1987); *Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 79 (1st Cir.1982). Under the Act, a person suffers from a disability when he is unable to engage in any substantial gainful activity due to a medically determinable condition likely to result in death or to continue for at least twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), and 1382(a)(3)(A). Numerous provisions of the Act emphasize the requirement that medical evidence confirm the existence of the alleged disability. *See, e.g.,* 42 U.S.C. §§ 416(i)(1), 423(d)(1), (3), (5), and 1382c(a)(3)(A).

Furthermore, a claimant is not guaranteed disability benefits merely because he suffers from a medically verifiable impairment. Not only must the claimant be unable to perform his past work, but, given his age, education and work experience, he must be unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Bowen,* 482 U.S. at 142, 107 S.Ct. at 2291; *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In evaluating Mr. Cordero's application for SSI, the ALJ applied the familiar and well-established five-step process enumerated in 20 C.F.R. § 404.1520. In regard to the first four steps of the sequential evaluation process, the ALJ found, and Mr. Cordero does not dispute, that 1) Mr. Cordero had not engaged in substantial gainful activity since April 20, 1988, 2) Mr. Cordero suffered from "some residual discomfort and restriction of motion of the low back secondary to mild degenerative joint disease and recurrent lumbosacral sprain injuries," but that "objec-

tive findings in physical examination have been minimal," 3) Mr. Cordero's impairments, singly or in combination, did not meet, and were not equivalent to, any listing of impairments found in 20 C.F.R., Part 404, Subpart P, App. 1, and 4) Mr. Cordero could not resume his past work.

### 2. *Residual functional capacity*

■ At step five of the sequential evaluation process, the Commissioner bore the burden of proving that a significant number of jobs existed in the national economy that Mr. Cordero could perform. *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520, 524 (1st Cir.1989). The ALJ was required to evaluate Mr. Cordero's RFC, age, education and work experience in order to determine whether he could work anywhere in the national economy. *See* 20 C.F.R. § 404.1520(f)(1); *Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982).

The ALJ found that Mr. Cordero had the RFC for a sedentary exertional level of work activity, as long as that work did not require bending, lifting, carrying more than ten pounds, or requiring an ability to vary his position at will. The vocational expert ("VE") then testified that a hypothetical claimant with Mr. Cordero's age, education, vocational experience, and a capacity for unskilled sedentary work could work as a sorter/carder of electronic parts, jewelry, or medical kits, a photoprocessor, a duplicating machine operator, or a jewelry assembler. Based upon the VE's testimony, the ALJ determined that Mr. Cordero was not disabled because there were jobs available which he could perform in the national economy.

Mr. Cordero argues that the ALJ failed to properly evaluate his pain pursuant to the factors related in *Avery v. Secretary of Health and Human Services,* 797 F.2d 19 (1st Cir.1986). Specifically, Mr. Cordero argues that a proper evaluation of his pain would have caused the ALJ to find that his exertional level was below sedentary. Such a finding would have effectively foreclosed a finding that Mr. Cordero was able to work in the national economy.

In *Avery,* the Court of Appeals for the First Circuit outlined the following factors to be considered in determining whether alleged pain constitutes an additional limitation upon a claimant's ability to perform a substantial gainful activity:

1. the nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. treatment, other than medication, for pain relief;

5. functional restrictions; and

6. the claimant's daily activities.

*Avery,* 797 F.2d at 29.

The ALJ determined that Mr. Cordero's allegations of pain were not entirely credible, and therefore did not reduce his RFC beyond the sedentary, unskilled level. Specifically, the ALJ determined that:

[m]edically acceptable clinical and laboratory diagnostic techniques, when considered together with the claimant's statements, his descriptions of daily activities, responses to medical treatment and opinions offered by treating and examining physicians, do not demonstrate the presence of a physical condition, or a combination of physical and mental conditions, which could reasonably be expected to produce pain or functional limitations of the nature, duration and severity the claimant alleges.

This Court will consider each step in the *Avery* inquiry *seriatim.*

### a. *Step one*

The ALJ concluded that medical evidence existed in the record which contradicted and outweighed Mr. Cordero's testimony regarding functional limitations caused by his pain. Specifically, the ALJ found that "the discrepancies between [Mr. Cordero's] allegations and the objective medical record could not be resolved in [his] favor based on this record." Accordingly, the ALJ found that, although Mr. Cordero suffered from "some residual discomfort," and "no doubt suffer[ed] from some mild distress as [a] result of his back problem," the nature, duration and frequency of his pain were *de minimis.*

The ALJ's conclusion was supported by Dr. Spear's 1991 conclusion that Mr. Cordero could perform work requiring light exertion despite his pain. Furthermore, the numerous gaps between medical treatment for Mr. Cordero's allegedly disabling level of pain entitled the ALJ to discount the credibility of his allegations of unrelenting pain. *Perez v. Secretary of Health and Human Services,* 958 F.2d 445, 446–47 (1st Cir.1991); *Irlanda Ortiz,* 955 F.2d at 766.

### b. *Steps two, three, and four*

The ALJ made no specific findings regarding steps two, three or four of the *Avery* inquiry, but he did find that Mr. Cordero's statements, and his responses to treatment, were considered when the ALJ determined that Mr. Cordero's condition could not reasonably have produced the pain and functional limitations alleged.

With respect to steps two, three and four, Mr. Cordero testified that 1) his condition was aggravated by climbing stairs and 2) the medical record is replete with prescriptions of pain medication, lumbar supports, heat, and physical therapy. The ALJ's rationale included reference to Mr. Cordero's testimony regarding steps two through four, as well as reference to medication and other treatment. Even though the ALJ made no specific findings regarding this evidence, this Court finds that the ALJ considered the above mentioned evidence in full conformance with *Avery.*

### c. *Step five*

The ALJ based his conclusion regarding step five of the *Avery* inquiry on medical evidence from Dr. Spear's May 21, 1991 examination, which indicated that Mr. Cordero: 1) had a normal gait, 2) could heel-to-toe walk, 3) was somewhat restricted in lumbar spine motion, 4) could lift 25 to 30 pounds occasionally, and 5) was well suited for bench-type work. Mr. Cordero argues that

Dr. Spear's findings were overwhelmed by contradictory medical evidence and by Mr. Cordero's testimony. Mr. Cordero's argument fails, however, because it is the responsibility of the Commissioner to determine issues of credibility, to draw inferences from the record and to resolve conflicts in the evidence. *Irlanda Ortiz*, 955 F.2d at 769; *Evangelista*, 826 F.2d at 141. In short, this Court concludes that the ALJ's conclusion regarding step five of the *Avery* inquiry is supported by substantial evidence.

### d. *Step six*

The ALJ clearly was convinced that Mr. Cordero's daily activities compelled the conclusion that his pain caused only minimal actual functional limitation. The ALJ's conclusion is supported both by Mr. Cordero's testimony and his responses to a Social Security "Disability Report." Mr. Cordero testified that he visited his father in Puerto Rico for three weeks, visited his friends, and was visited by friends at his home. Furthermore, Mr. Cordero testified that he occasionally read books and magazines and he was able to watch television for "lots of time." In a March 28, 1991 "Disability Report," Mr. Cordero stated that he shopped, did housework, and visited his cousin's house.

Mr. Cordero argues that the ALJ misconstrued his daily activities because the ALJ erroneously stated that Mr. Cordero testified that he was able to do laundry and cook. Indeed, it is undisputed that the ALJ's statement was in error, because Mr. Cordero specifically testified that he could not perform such activities. Mr. Cordero did, however, state on the "Disability Report" that he shopped and did housework, and thus this Court finds that the ALJ's error was harmless. The ALJ's conclusion regarding step six of the *Avery* inquiry is, therefore, supported by substantial evidence.

### e. *The ALJ's Avery conclusions*

As a consequence of the ALJ's determination that Mr. Cordero was not a credible witness, substantial evidence in the record supports the ALJ's findings with respect to the *Avery* inquiry. The ALJ's conclusion that Mr. Cordero's pain was *de minimis* was supported by Dr. Spear's 1991 conclusion that Mr. Cordero could perform work requiring light exertion despite his pain. Even though the ALJ made no specific findings regarding steps two, three and four, the ALJ considered evidence relating to those steps in full conformance with *Avery*. The ALJ's conclusions regarding the effect of Mr. Cordero's pain on his functional limitations is supported by Dr. Spear's 1991 medical report. Finally, the ALJ's conclusions regarding Mr. Cordero's daily activities is supported by Cordero's testimony and his responses to a Social Security "Disability Report." This Court therefore affirms the ALJ's *Avery* inquiry.

## III. CONCLUSION

Based upon the foregoing considerations, this Court finds that the ALJ appropriately analyzed Mr. Cordero's allegations of disabling pain in conformance with *Avery*. Furthermore, the record supports the ALJ's conclusion that Mr. Cordero's condition did not constitute a disability under the Act. The medical evidence, coupled with Mr. Cordero's testimony and other statements, compels an inference that Mr. Cordero is neither disabled nor unable to perform gainful employment. The Commissioner's decision to deny disability benefits to Mr. Cordero will, therefore, be AFFIRMED.

## ORDER

For the foregoing reasons, this Court finds that the final determination of the Commissioner that Mr. Cordero is not disabled is supported by substantial evidence in the record. Furthermore, this Court finds that the Commissioner's conclusions were in accordance with the law. Accordingly, the decision of the Commissioner is AFFIRMED.

SO ORDERED.