**Helen BLYTHER, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 93–40115–NMG.**

United States District Court, D. Massachusetts.

June 7, 1996.

---

62

Sandra L. Mayes, Legal Assistance Corporation of Central Massachusetts, Fitchburg, MA, for Plaintiff.

Charlene A. Stawicki, U.S. Atty.'s Office, Boston, MA, for Shirley Chater.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is a review of the final decision of the Commissioner of Health and Human Services ("the Commissioner") under the Social Security Act, as amended, 42 U.S.C. § 405(g). In that decision, the Commissioner denied to the plaintiff, Helen Blyther ("Blyther"), Supplemental Security Income benefits based on disability ("SSI") under the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3).

On October 17, 1990, Ms. Blyther filed an application for SSI. Her application was initially denied on December 21, 1990, and denied again on Reconsideration on April 30, 1991. On July 25, 1991, Ms. Blyther filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On April 14, 1992, an ALJ, after considering the case *de novo*, determined that Ms. Blyther was not under a disability as defined by the Act. On April 9, 1993, the Appeals Council denied Ms. Blyther's request for review. That decision rendered the April 14, 1992 ALJ decision the final decision of the Commissioner, subject to review by this Court. *See Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 25 (1st Cir.1986).

Ms. Blyther seeks a reversal of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g), which provides, *inter alia*, that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing." Ms. Blyther contends that the final decision of the Commissioner was neither supported by substantial evidence nor in accordance with the law. Ms. Blyther therefore requests that this Court reverse the final decision of the Commissioner and remand the matter for further proceedings. For the reasons stated herein, the decision of the Commissioner will be affirmed.[1]

## I. BACKGROUND

Ms. Blyther was born on May 12, 1940. She has an eleventh grade education, and has worked as a box bundler, assembler and housekeeper. She alleges that she is disabled by a right leg condition, a peptic ulcer, a mental impairment and pain in her right leg.

Ms. Blyther was first diagnosed with anxiety after a January 6, 1980 examination. On September 2, 1985, Ms. Blyther fractured the fibula and tibia of her right leg. An examination by Dr. Thomas H. Tracy on September 25, 1986 showed a normal gait pattern, power, and range of motion, with no pain, swelling, or deformity.

Ms. Blyther was next examined by Dr. H.G. Clermont in November, 1989, complaining of a bloody discharge at the site of her right ankle fracture, and pain in her right arm. Dr. Clermont recommended that Ms. Blyther obtain an opinion from an orthopedic surgeon for her right ankle problem, and that she obtain an EMG of her left arm. It is unclear from the record whether Ms. Blyther obtained an opinion from an orthopedic surgeon regarding those conditions.

On January 3, 1990, Ms. Blyther suffered a fall on her right knee and coccyx. She was X-rayed by Dr. Clermont, who diagnosed a slight suprapatellar effusion in her calf,[2] and a fracture of the last two segments of her coccyx. In October, 1990, Dr. Clermont noted that Ms. Blyther had been twice hospitalized for abdominal pain which he thought was due to recurring peptic ulcer disease. Dr. Clermont admitted that this diagnosis was unconfirmed, because no endoscopy had been performed. He further opined that Ms. Blyther's ankle fracture had fused, leaving her with chronic pain.

On December 4, 1990, Ms. Blyther was examined by orthopedic surgeon Dr. Ivan M. Spear, at the request of the Disability Determination Services ("DDS"). Dr. Spear found that Ms. Blyther's gait was excellent, she was able to heel to toe walk, and could hop on both feet. Furthermore, her pulses, range of motion, and straight leg lifting were normal. Dr. Spear concluded that Ms. Blyther's fractures had healed, and that the degree of pain she was then experiencing did not constitute a limiting or disabling factor.

Also in December, 1990, Ms. Blyther was examined by psychiatrist Dr. Robert Sharpley, at the request of DDS. Dr. Sharpley diagnosed Ms. Blyther with depressed mood and chronic anxiety reaction. Based upon Dr. Sharpley's report, DDS psychologist Dr. Alex Ursprung concluded that although Ms. Blyther suffered from affective disorders, she did not suffer from a severe mental impairment. He further found that Ms. Blyther's mental impairment did not 1) restrict her activities of daily living, 2) create difficulties in maintaining social functioning, 3) cause deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, and 4) cause episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from that situation or to

---

1. For purposes of this decision, the Court has relied upon the entire administrative record, the defendant's memorandum in support of her motion for an order affirming the decision of the Commissioner, and Ms. Blyther's memorandum of law in support of her motion to reverse decision.

2. A suprapatellar effusion is an escape of fluid from the region above the patella. *Stedman's Medical Dictionary*, 26th ed., at pp. 547, 1707.

experience exacerbation of signs and symptoms.

In February, 1991, Ms. Blyther was again examined by Dr. Clermont for abdominal pain. In September, 1991, Ms. Blyther was diagnosed with anxiety at the Rutland Regional Medical Center after complaining of dizziness and difficulty in breathing. Finally, in October, 1991, Dr. Clermont reported that Ms. Blyther suffered from anxiety, right ankle pain and deformity, and epigastric pain.

At her hearing before the ALJ, Ms. Blyther testified that she used over the counter medication to alleviate her leg pain. She further testified that her leg pain was aggravated by walking one half of a mile, and by climbing stairs, and her stomach pain was aggravated by stress. In regard to her daily activities, Ms. Blyther testified that 1) she was able to read, 2) performed light housework, 3) walked her dog for one half of a mile, 4) drove locally, 5) shopped for groceries weekly, and 6) fished during clement weather.

## II. ANALYSIS

### A. *Standard of review*

■ Review of a final decision of the Commissioner is limited pursuant to 42 U.S.C. § 405(g). Factual findings by the Commissioner must be affirmed if they are supported by substantial evidence in the record and are in accordance with the law. *Id.; Irlanda Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1st Cir.1991). This Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole could accept it as adequate to support [her] conclusion." *Irlanda Ortiz,* 955 F.2d at 769 (quoting *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981)). *See also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ Even if the record could be perceived to support other conclusions, the final decision of the Commissioner must be upheld if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987),

*cert. denied,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). It is the responsibility of the Commissioner, not the reviewing court, to determine issues of credibility, draw inferences from the record and resolve conflicts in the evidence. *Irlanda Ortiz,* 955 F.2d at 769; *Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, 141 (1st Cir.1987).

### B. *Legal analysis*

#### 1. *Disability determination*

■ To establish an entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Act. *Bowen v. Yuckert,* 482 U.S. 137, 146–47 & n. 5, 107 S.Ct. 2287, 2294 & n. 5, 96 L.Ed.2d 119 (1987); *Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 79 (1st Cir.1982). Under the Act, a person suffers from a disability when she is unable to engage in any substantial gainful activity due to a medically determinable condition likely to result in death or to continue for at least twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), and 1382c(a)(3)(A). Numerous provisions of the Act emphasize the requirement that medical evidence confirm the existence of the alleged disability. *See, e.g.,* 42 U.S.C. §§ 416(i)(1), 423(d)(1), (3), (5), and 1382c(a)(3)(A).

■ Furthermore, a claimant is not guaranteed disability benefits merely because she suffers from a medically verifiable impairment. Not only must the claimant be unable to perform her past work, but, given her age, education and work experience, she must be unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Bowen,* 482 U.S. at 142, 107 S.Ct. at 2291–92; *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In evaluating Ms. Blyther's application for SSI, the ALJ applied the familiar and well-established five-step process enumerated in 20 C.F.R. § 404.1520. The ALJ made no finding regarding step one of the sequential evaluation process, but the briefs filed by the

parties indicate that it is undisputed that Ms. Blyther was not engaging in any substantial gainful activity. In regard to steps two through four, the ALJ found, and Ms. Blyther does not dispute, that 1) Ms. Blyther had a history of fracture injuries to the right tibia, fibula, and coccyx, resolved parimenopausal menometrorrhagia, peptic ulcer disease, an adjustment disorder with depressed mood, and a generalized anxiety disorder, 2) Ms. Blyther's impairments, singly or in combination, did not meet, and were not equivalent to, any listing of impairments found in 20 C.F.R., Part 404, Subpart P, App. 1, and 3) Ms. Blyther could not resume her past work.

### 2. Residual functional capacity

■ At step five of the sequential evaluation process, the Commissioner bore the burden of proving that a significant number of jobs existed in the national economy that Ms. Blyther could perform. *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir.1989). The ALJ was required to evaluate Ms. Blyther's residual functional capacity ("RFC"), age, education and work experience, to determine whether she could work anywhere in the national economy. *See* 20 C.F.R. § 404.1520(f)(1); *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982).

The ALJ found that Ms. Blyther retained the RFC for a light exertional level of work activity, and that Ms. Blyther's nonexertional impairments did not significantly compromise the vocational base of jobs requiring light exertion. The ALJ then applied the "Grid" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, and determined that Ms. Blyther was "not disabled."

Ms. Blyther argues that the ALJ incorrectly characterized her mental impairments, and erred in his evaluation of her disabling pain. Accordingly, Ms. Blyther argues that because her mental impairments and her pain were nonexertional limitations, the use of the Grid to find her "not disabled" was inappropriate.

### a. Mental impairments

■ The ALJ concluded that although Ms. Blyther suffered from anxiety and affective disorders, they did not impair her ability to perform substantial gainful activity. Ms. Blyther argues that the ALJ failed to comply with the Commissioner's regulations, because he did not assess her mental condition:

> in terms of functional limitations imposed by the impairment on Plaintiff's activities of daily living; her social functioning; her ability to concentrate, persist and pace herself; and her ability to tolerate increased mental demands associated with competitive work [in conformance with] 20 C.F.R. Part 404, Subpt. P, Appendix 1, Section 12.00 C, Page 413.

This Court finds that the ALJ's conclusion was supported by substantial evidence in the record, and in conformance with Social Security Regulations. Specifically, the ALJ's decision is supported by the December 10, 1990 report filed by DDS psychologist Dr. Ursprung, who concluded that Ms. Blyther's mental impairment did not 1) restrict her activities of daily living, 2) create difficulties in maintaining social functioning, 3) cause deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, or 4) cause episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from that situation or to experience exacerbation of signs and symptoms. Furthermore, Dr. Sharpley concluded that although Ms. Blyther suffered from an adjustment disorder and chronic anxiety reaction, she was not disabled by a mental impairment.

Although the ALJ did not refer to Dr. Ursprung's report in his decision, that report clearly assessed Ms. Blyther's mental impairment in functional terms. To the extent that the reports of Drs. Ursprung and Sharpley are contradicted by other evidence in the record, it is the responsibility of the Commissioner, not this Court, to determine issues of credibility, to draw inferences from the record and to resolve conflicts in the evidence. *Irlanda Ortiz*, 955 F.2d at 769; *Evangelista*, 826 F.2d at 141. The ALJ's determination that Ms. Blyther's mental impairments did not substantially affect her ability to perform substantial gainful activity is, therefore, supported by substantial evidence.

### b. *Allegations of disabling pain*

■ Ms. Blyther also argues that the ALJ failed to properly evaluate her pain. In *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986), the Court of Appeals for the First Circuit outlined the following factors that should be considered in determining whether alleged pain constitutes an additional limitation upon a claimant's ability to perform a substantial gainful activity:

1. the nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. type, dosage, effectiveness, and adverse side-effects of any pain medication;
4. treatment, other than medication, for pain relief;
5. functional restrictions; and
6. the claimant's daily activities.

*Avery,* 797 F.2d at 29.

Ms. Blyther allegedly suffers from pain in her leg, and pain in her stomach caused by a peptic ulcer. The ALJ determined that her allegations of pain were not entirely credible. Specifically, the ALJ determined that:

[m]edically acceptable clinical and laboratory diagnostic techniques, when considered together with the claimant's statements, her descriptions of daily activities, responses to medical treatment and opinions offered by treating and examining physicians, do not demonstrate the presence of a physical condition or combination of physical and mental conditions, which could reasonably be expected to produce pain or other symptoms of the nature, duration and severity the claimant alleges.

In regard to step one of *Avery,* the ALJ found that "the discrepancies between [Ms. Blyther's] allegations and the objective medical record cannot be resolved in [her] favor based on this record." Accordingly, the ALJ found that the nature, duration and frequency of her pain were *de minimis.* This finding is supported by Dr. Spear's 1990 conclusion that Ms. Blyther's pain was not a disabling factor. In addition, the medical record indicates that Ms. Blyther's stomach pain was successfully treated through medication, and that she only suffered from occasional episodes of such pain. Furthermore, Ms. Blyther's treating physician could not confirm his diagnosis of a peptic ulcer, because she did not undertake an endoscopy.

Although the ALJ made no specific findings regarding step two of the *Avery* Inquiry, he stated that Ms. Blyther's statements were considered when he determined that Ms. Blyther's condition could not reasonably have produced the pain and other symptoms alleged. Ms. Blyther testified that her leg pain was aggravated by walking one half of a mile, and by climbing stairs, and that her stomach pain was aggravated by stress. The ALJ also referred to Dr. Spear's 1990 conclusion that Ms. Blyther's pain was aggravated by changes in the weather.

The ALJ also did not make specific findings regarding steps three and four of the *Avery* inquiry. He stated, however, that Ms. Blyther's responses to treatment were considered in making his *Avery* finding. The medical record contains evidence of physical therapy and prescriptions for stomach medicine. In addition, Ms. Blyther testified that she used over the counter medication to alleviate her leg pain. The ALJ's rationale also included reference to medication and transcutaneous nerve stimulator treatment. The ALJ also concluded that Ms. Blyther's failure to seek treatment for stress indicated that her complaints of stomach pain caused by anxiety were not to be believed.

Therefore, even though the ALJ made no specific findings regarding the evidence pertaining to steps two through four, this Court finds that the ALJ considered evidence in the record regarding those steps in full conformance with the *Avery* requirements.

The ALJ based his conclusion regarding step five of the *Avery* inquiry on medical evidence from Dr. Spear's 1990 examination, which indicated that Ms. Blyther: 1) had an excellent gait, 2) could heel-to-toe walk, 3) could hop on both legs, 4) had a full range of motion of the right knee and ankle, and 5) had normal straight leg lifting ability. In

addition, the ALJ implicitly concluded that Ms. Blyther's successful response to treatment for her stomach pain compelled the conclusion that such pain did not cause any functional limitation.

In regard to step six of *Avery*, the ALJ clearly was convinced that Ms. Blyther's daily activities compelled the conclusion that her pain caused only minimal true functional limitation. The ALJ's conclusion is supported by Ms. Blyther's testimony. Specifically, Ms. Blyther testified that, on a daily basis, she was able to read, could perform light housework, and walk her dog for one half of a mile. Furthermore, she testified that she drives locally, and shops for groceries weekly. Finally, she testified that she fishes during clement weather.

This Court finds, therefore, that substantial evidence in the record supports the ALJ's findings with respect to his application of the *Avery* factors. Notwithstanding the fact that the ALJ relied upon Dr. Spear's conclusion instead of other medical evidence in the record, as stated above, it is the responsibility of the Commissioner, not this Court, to determine issues of credibility, to draw inferences from the record and to resolve conflicts in the evidence. *Irlanda Ortiz*, 955 F.2d at 769; *Evangelista*, 826 F.2d at 141. This Court therefore affirms the ALJ's findings regarding his *Avery* inquiry into Ms. Blyther's alleged pain.

#### c. *Use of the Grid*

The ALJ concluded that Ms. Blyther retained the RFC for a light exertional level of work activity. He further concluded that because Ms. Blyther's past work was unskilled, she could perform unskilled work. Finally, the ALJ found that Ms. Blyther's nonexertional impairments did not significantly compromise the vocational base of jobs requiring light exertion. The ALJ then applied the "Grid" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, and determined that, pursuant to Grid Rule 202.10, Ms. Blyther was "not disabled."

Ms. Blyther argues that the presence of non-exertional impairments precluded the ALJ's use of the Grid. Specifically, Ms. Blyther contends that she suffers from the following nonexertional impairments: 1) "her right leg sometimes will not work causing her to fall," 2) she must elevate her leg to alleviate pain more than once per day, and 3) her ability to sit was limited by her coccyx fracture.

20 C.F.R. § 416.969a provides that:

[w]hen the limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms, such as pain, affect only [her] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that [the claimant] ha[s] only exertional limitations. When [a claimant's] impairment(s) and related symptoms only impose exertional limitations and [her] specific vocational profile is listed in a rule contained in [20 C.F.R. Part 404, Subpart P, Appendix 2], we will directly apply that rule to decide whether [she is] disabled.

*Id.* at § 416.969a(b).

This Court concludes that the above mentioned limitations are exertional impairments, because they relate to sitting, standing and walking. Accordingly, because Ms. Blyther's vocational profile is reflected in Grid Rule 202.10, this Court concludes that the ALJ's use of the Grid to find Ms. Blyther "not disabled" was appropriate.

Although a claimant who has difficulty functioning due to anxiety or depression is deemed to suffer from a nonexertional impairment, *id.* at § 416.969a(c)(1)(i), Ms. Blyther does not argue that her anxiety constituted a nonexertional limitation. Notwithstanding Ms. Blyther's failure to raise that issue, her anxiety and depression were not nonexertional limitations, because the ALJ determined that Ms. Blyther's anxiety and depression were not impairments within the meaning of the Act. *Id.*

Furthermore, although a claimant who has difficulty maintaining attention or concentration due to pain is deemed to suffer from a nonexertional impairment, *id.* at § 416.969a(c)(1)(ii), Ms. Blyther does not argue that her pain affected her attention or concentration. Indeed, Ms. Blyther testified that she enjoyed reading and watching televi-

sion.[3] Again, notwithstanding Ms. Blyther's failure to raise that issue, her pain was not a nonexertional limitation, because the ALJ determined, pursuant to *Avery*, that her pain was not an additional limitation on her ability to perform substantial gainful activity.

 At the time of the ALJ's determination, Ms. Blyther was 51 years old and had an eleventh grade education. 20 C.F.R. §§ 404.1563, 404.1564. Furthermore, she had unskilled work experience, and had the RFC to perform work requiring light exertion. 20 C.F.R. §§ 404.1568, 404.1567(b). Under Rule 202.10 of the Grid, therefore, Ms. Blyther was not disabled. *See* 20 C.F.R. §§ 404.1596, 416.969, and Part 404, Subpart P, Appendix 2. This Court finds that the ALJ appropriately applied the Grid to Ms. Blyther and, therefore, affirms his determination that Ms. Blyther was not disabled.

## III. CONCLUSION

Based upon the foregoing considerations, this Court finds that: 1) the ALJ appropriately analyzed Ms. Blyther's mental impairment in conformance with the Social Security Regulations, 2) the ALJ appropriately analyzed Ms. Blyther's allegations of disabling pain in conformance with *Avery*, and 3) the ALJ did not err in using the Grid to determine Ms. Blyther's disability status. Because the record supports the ALJ's conclusion that Ms. Blyther's condition did not constitute a disability under the Act, the Commissioner's decision to deny disability benefits to Ms. Blyther, accordingly, will be AFFIRMED.

### ORDER

For the foregoing reasons, this Court finds that the final determination of the Commissioner that Ms. Blyther is not disabled is supported by substantial evidence in the record. Furthermore, this Court finds that the Commissioner's conclusions were in accor-

dance with the law. Accordingly, the decision of the Commissioner is AFFIRMED.

SO ORDERED.

---

**3.** Ms. Blyther also testified that she suffered from dizzy spells, which affected her ability to read. The ALJ noted, however, that there is no medical evidence in the record which explains the cause of the dizzy spells. The ALJ obviously made a credibility assessment, and found that Ms. Blyther's testimony regarding dizzy spells was not credible. Credibility assessments are firmly within the power of the ALJ. *Irlanda Ortiz*, 955 F.2d at 769; *Evangelista*, 826 F.2d at 141.